UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NATHAN JOHN HUIRAS,

        Plaintiff,

    v.

                              Case No. 22-cv-575-pp

KRISTIN CAFFERTY,
MEGAN MCGEE NORRIS,
JESSICA ANNE GRUNDBERG,
JEFFREY LEGGETT
and ANDREW PATCH,

        Defendants.

**ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION AND DENYING AS MOOT DEFENDANTS' MOTIONS TO DISMISS (DKT. NOS. 34, 37, 43, 49, 57); DENYING AS MOOT DEFENDANT GRUNDBERG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (DKT. NO. 5); DENYING AS MOOT DEFENDANT MCGEE NORRIS'S REQUEST FOR SANCTIONS (DKT. NO. 38); DENYING AS MOOT DEFENDANT NORRIS'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT (DKT. NO. 29); DENYING AS MOOT DEFENDANT GRUNDBERG'S MOTION TO STRIKE (DKT. NO. 63); DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 72); DENYING AS MOOT PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 76) AND DISMISSING CASE WITH PREJUDICE**

On July 8, 2022, the plaintiff, representing himself, filed his fifth amended complaint (now the operative complaint). Dkt. No. 33. He sues under 42 U.S.C. §1983; the plaintiff alleges that the defendants violated his constitutional rights as a father in relation to a custody case in state court, and he seeks injunctive relief against the defendants. Id. at 1–2. Each of the five

1

defendants have filed separate motions to dismiss. Dkt. Nos. 34, 37, 43, 49, 57.

## I.    Procedural History

On May 16, 2022, the plaintiff filed the original complaint. Dkt. No. 1. The next day, the court received from the plaintiff an amended complaint. Dkt. No. 3. Within a couple of days, defendant Jessica Grundberg filed a motion to dismiss the amended complaint. Dkt. No. 5. Without the court's leave, the plaintiff then filed a second amended complaint, dkt. no. 9, followed four days later by a third amended complaint, dkt. no. 15, and a fourth amended complaint five days after that, dkt. no. 18. The different complaints involved generally similar allegations but the named defendants changed with each iteration.

Less than a month after filing the lawsuit, and just over a week after he filed his fourth amended complaint, the plaintiff filed a motion to transfer to the federal court a case that was pending in family court in Racine County, dkt. no. 23, and a "motion to dismiss defendants," which in fact was a request to clarify the identities and name spellings of the defendants in this federal suit, dkt. no. 24. Two days later, defendant Megan McGee Norris filed a motion to dismiss the case for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. Dkt. No. 29.

On June 17, 2022, the court issued an order striking the second, third and fourth amended complaints because the plaintiff had filed them without the court's leave as required by Federal Rule of Civil Procedure 15(a)(2). Dkt.

2

No. 32 at 5–7. The court also denied the plaintiff's motion to transfer the Racine County circuit court family case to federal court and his motion to dismiss defendants. <u>Id.</u> at 10–11. The court ordered that by the end of the day on July 8, 2022, the plaintiff must file a fifth amended complaint containing all his allegations and naming the correct defendants. <u>Id.</u> at 12. The court received the plaintiff's fifth amended complaint on the July 8, 2022 deadline. Dkt. No. 33. Since then, the defendants each have filed separate motions to dismiss the fifth amended complaint. Dkt. Nos. 34, 37, 43, 49, 57. (Defendant Jessica Grundberg also filed a motion to strike one of the two response briefs the defendant filed in opposition to her motion to dismiss. Dkt. No. 63).

On September 2, 2022, the court received from the plaintiff a motion for preliminary injunction "in the underlying action," asking the court to "suspend all orders related to child support and wage garnishments in the underlying" state court case and "suspend all Federal Award dollars for child support enforcement into the Racine County Child Support Agency." Dkt. No. 72 at 1. Six days later, the court received from the plaintiff a motion for a temporary restraining order, asking the court to "restrain the official of the underlying action, Kristin Cafferty, in collusion with Megan McGee Norris and Jessica Grunberg [sic] from ordering [the plaintiff] into jail custody without any respect to due process." Dkt. No. 76 at 1. The motion refers to an order signed by Racine County Circuit Court Judge Kristin Cafferty (one of the defendants in this suit) committing the plaintiff to the Racine County Jail for failure to

comply with the judge's order to substantially comply with discovery requests in the Racine County family court case. <u>See</u> Dkt. No. 76-1.

## II.    Fifth Amended Complaint

In the fifth amended complaint, the plaintiff named as defendants Kristin Cafferty (the officiant of the "administrative tribunal"), Megan McGee Norris ("Guardian Ad Litem"), Andrew Patch ("Family Court Worker"), Jessica Grundberg ("Mother's Attorney") and Jeffery Leggett ("Representing the Racine County Child Support Agency"). Dkt. No. 33 at 1. The plaintiff alleges that he "was the victim of having his fundamental liberty interest in care and custody of his biological offspring taken away without procedural and substantive due process equal protections." <u>Id.</u> He alleges that the defendants conspired to violate his constitutional rights as a father. <u>Id.</u> The plaintiff identifies each of the defendants by their relationship to a case in Racine County Circuit Court, 2021FA000592. <u>Id.</u> at 1, 4. Judge Kristin Cafferty presided over the state court case. <u>Id.</u> at 1. Andrew Patch, allegedly a licensed professional counselor, is a family court worker in Racine County. <u>Id.</u> Jessica Grundberg was the attorney for the mother of the plaintiff's children, as well as a witness at one point during the state court proceeding. <u>Id.</u> at 1, 3–4. Jeffrey Leggett represented the Racine County Child Support Agency. <u>Id.</u> at 1. Megan McGee Norris served as the guardian *ad litem* for the plaintiff's children. <u>Id.</u>

The plaintiff believes the defendants engaged in this alleged conspiracy to further the interests of their "Corporate Counsel's profitable statutory enforcement scheme of Child Support." <u>Id.</u> at 1. He alleges that "[t]he contract

4

that Racine County had with the Corporate Child Support agency is too profitable and makes too much money that feeds into the Racine County Treasury for them to set precedent and create caselaw that aligns with parental rights." Id. He believes the "scheme" set up for child support in Racine County is unconstitutional, citing the Hague Convention. Id. at 2. The plaintiff believes that the "Wisconsin Child Support Agency" operates under the Hague Convention;[1] he appears to assert that the Hague Convention is unconstitutional under Article 1, Section 10 of the United States Constitution, which says that states may not enter into treaties with foreign nations. Id.

The plaintiff alleges that on July 2, 2021, "the mother" left Wisconsin "withholding" his children from him in Illinois; he says "the mother" hired attorney Grundberg. Id. at 3. He asserts that on August 26, 2021, "Commissioner Georgia Herrera removed all custody from the father[2] based on powerful mental health allegations made by the mother with no factual or medical basis." Id. The plaintiff says that the mother was awarded child support of $1,640 per month, but that "it was later found via financial discovery that the money was mostly not spent on [the] children." Id. The

---

[1] The Hague Convention on the Protection of Children and Co-operation in Respect of Intercountry Adoption is an international agreement that applies to adoptions by U.S. citizens of children from countries that are parties to the Convention. https://travel.state.gov/content/travel/en/Intercountry-Adoption/Adoption-Process/understanding-the-hague-convention.html. It appears to have no bearing on the plaintiff's divorce and custody case in Racine County.

[2] The plaintiff appears to refer to himself as "the father" throughout the fifth amended complaint.

5

plaintiff contends that Grundberg conspired with family members to "file misrepresenting affidavits without any factual basis." Id. He asserts that Commissioner Georgia (who is not a defendant) said that the fact that the plaintiff's brother was a dentist was enough to take all custody away from the plaintiff, and says she denied him any opportunity to cross-examine the misleading affidavits. Id.

The plaintiff alleges that on October 15, 2021, Grundberg acted as a witness "by claiming that the father put a nail in her tire with no factual basis behind that claim." Id. The plaintiff characterizes this statement as libel and says that Grundberg made the statement to defame his character, never providing any evidence to support it. Id. at 3–4.

The fifth amended complaint alleges that on October 19, 2021, defendant McGee Norris provided the court with a written recommendation "where she conducted a mental health assessment of the father without his consent." Id. at 4. He claims that she "violated his 4th amendment right to medical privacy" in letters she sent the court over several months. Id. The plaintiff alleges that McGee Norris is in possession of "piles of clear and convincing medical evidence showing that the father is mentally stable," but that she nonetheless made false statements to the court regarding her opinion of the plaintiff's mental health "without a license to practice psychology." Id. He notes that a "key role" of a guardian *ad litem* is to enforce child support, and that GALs "receive monetary awards for child support enforcement." Id.

The plaintiff alleges that on October 25, 2021, the Racine County Child Support Agency—represented by defendant Leggett—issued a garnishment order to the plaintiff's employer for the $1,640 per month in child support. Id. The plaintiff says that this created "the higher income party of the trial court case as the non-custodial parent maximizes money flow into their statutory child support enforcement scheme." Id. He says that he himself does not have a "Title IV-D contract" and that he does not agree or consent "to this statutory child support enforcement scheme." Id.

The plaintiff says that around December 21, 2021, he advocated for his parental rights to McGee Norris, but that she "indicated that asking for rights does not serve the children's best interests." Id. He says that both McGee Norris and defendant Patch told the court orally and in writing that "the behavior of a father asking for fundamental liberty interest rights is 'Aggressive' behavior that has been used against the father to take away child placement." Id.

The plaintiff asserts that around December 22, 2021, McGee Norris again acted as a witness, this time conducting another mental health assessment of the plaintiff and telling the court that he had "lost his 'ability to mask.'" Id. He argues that McGee Norris is not a licensed psychologist and can't make such a medical assessment. Id. The plaintiff says McGee Norris also "used the counted number of emails sent by the father as an indicator of mental stability where the father was simply just advocating for his biological offspring." Id. The plaintiff asserts that McGee Norris's assertions to the court "secured many

7

more months of $1640 child support feeding into the Corporate Counsel Child Support Agency as Kristin Cafferty has substituted her judgement [sic] in this case to the rogue guardian ad litem recommendations and mental health assessments." Id.

The plaintiff explains that on February 14, 2022, he served "the parties of Racine County Family Law Case 2021FA000592 a Color of Law Violation Warning." Id. He says that the next day, he logged on to a Zoom therapy session, but that McGee Norris later misrepresented on the record his location and whereabouts during that time. Id.

It appears that a hearing took place on February 16, 2022. The plaintiff alleges that on that date, he filed a motion to dismiss the "trial court case due to lack of subject matter jurisdiction with supporting documentation." Id. He says that multiple times, he asked the court to acknowledge the motion and "put their wet ink signature on it," but that Judge Cafferty refused to sign. Id. The plaintiff says that in response to his "Color of Law Violation Warning," McGee Norris filed a letter with the court recommending that the court "remove all child placement from the father." Id. at 5. The plaintiff alleges that McGee Norris did not properly serve the motion, and that she made the motion verbally in court, which the plaintiff alleges violated his Fourteenth Amendment rights. Id. He alleges that McGee Norris falsely told the court that on February 15, 2022, the plaintiff was spitting on her lawn, when in fact he was in the remote therapy session with his counselor. Id. The plaintiff says that he interjected, asking for "due process during this unfair court hearing." Id. He

8

maintains that Judge Cafferty pressured him to "swear into the hearing" and that he refused to do so. Id. He says he insisted that before his child placement rights could be taken away, there needed to be clear and convincing evidence. Id. The plaintiff asserts that Judge Cafferty then called Patch as a witness; Patch testified about a Zoom video "where he did not like the father's behavior as the reason to remove all child contact." Id. The plaintiff claims that a PhD in child psychology later viewed this video and "did not see enough misbehavior to remove all child contact." Id. The plaintiff indicates that he insisted to Judge Cafferty that the video should be played in court (and the hearing converted to an evidentiary hearing), but that Judge Cafferty refused and removed his contact with his children. Id. The plaintiff says he has not seen his children since February 2022 "as the trial court continues to refuse to admit Dr Kravit's PHD in psychology evaluation concluding that the father's mental health does not preclude him from parenting." Id. It appears that at the same hearing, McGee Norris moved for contempt of court against the plaintiff "for being hesitant about completing the court ordered psychological evaluation." Id.

The plaintiff alleges that on February 17, 2022, Grundberg "again acted as a witness to the proceeding making a false assertion that a threatening phone call received by her was directly related" to the plaintiff. Id. The plaintiff says he had no awareness of this phone call until he learned about it "via the affidavit testimony e-filed to this trial court case." Id.

The plaintiff asserts that on February 21, 2022, he filed a small claims personal injury lawsuit against Patch for "giving malicious testimony described

9

above . . . ." Id. He says that on March 1, 2022, Dr. Allison Kravit "Psy D" completed a court ordered psychological evaluation of the plaintiff and "concluded that '[the plaintiff's] mental health does not preclude him from parenting.'" Id. at 5–6. He says that to this day, the court refused to "enter this evaluation into evidence and has instead put financial discovery of the divorce as a higher priority to the action." Id. at 6. The plaintiff alleges that the same day—March 1, 2022—Judge Cafferty threatened on the record to file felony charges against the plaintiff if he did not dismiss the small claims lawsuit; the plaintiff says he felt threatened, so he dismissed the suit on March 21, 2022. Id. The plaintiff says that on March 10, 2022, Patch filed criminal charges against the plaintiff for "feeling threatened by his small claims lawsuit." Id. The plaintiff says that Patch "misinformed and misrepresented himself to the police officer that he was the guardian ad litem on this case." Id. The plaintiff alleges that these criminal charges never were properly served on him; he found out about them through the Wisconsin Circuit Court online access system. Id. He says no arrests were made. Id.

The plaintiff asserts that on March 29, 2022, he filed an open records request with the Racine County Child Support Corporate Counsel, who responded "with a contract showing millions of dollars' worth of awards that Racine County receives for enforcing child support." Id. The plaintiff alleges that "they" profit from violating his rights by taking custody from parents while accepting child support payments. Id.

10

The plaintiff alleges that on April 4, 2022, Grundberg filed a letter with the court "filing for overtrial by the father" and asking for attorneys' fees, even though the plaintiff argues that what delayed the case was the mother's "powerful objections to increase in child placement." Id. The plaintiff insists that he was trying to move the case to an evidentiary hearing when Judge Cafferty "refused to admit key medical documents into evidence." Id. The plaintiff characterizes the fees as "an unnecessary fine that violates [his] United States 8th amendment rights." Id.

The plaintiff alleges that on April 25, 2022, he again asked Judge Cafferty to dismiss the case "due to not acknowledging [his] service of Color of Law Violation Warning with a wet ink signature." Id. at 7. He says that Judge Cafferty violated his Fourteenth Amendment right to due process by not formally acknowledging service of this notice. Id. He says that on the same day, Judge Cafferty denied him his right to discovery "by disallowing a deposition of the mother that would help get to the bottom of her baseless mental health allegations." Id. The plaintiff asserts that this, too, violated his Fourteenth Amendment due process rights. Id.

The plaintiff alleges that on May 16, 2022, he formally served the Wisconsin Attorney General and the governor with a "Notice of Intent of a federal lawsuit." Id. at 6. He says that that same day, Judge Cafferty abused her discretion "by making abusive court orders to violate [the plaintiff's] 4th Amendment right to privacy by forcing him to be evaluated by a doctor in Racine County who has a personal relationship with the Family Court Worker,

11

Andrew Patch." Id. He asserts that "[t]he officers of this court" had stated on the record that they were more comfortable with Dr. David Thompson of Racine, rather than Dr. Allison Kravit from Ozaukee County. Id. The evaluation was scheduled for July 11, 2022 (three days after the plaintiff filed the fifth amended complaint). Id. The plaintiff says that Judge Cafferty threatened that if he did not cooperate with the evaluation "then he [would] be taken into custody and put into jail." Id.

The plaintiff alleges that on June 7, 2022, Judge Cafferty held him in contempt of court and threatened to send him to jail if he did not "disclose over 18 months of bank statements in financial discovery while the plaintiff has made several attempts at discovery such as a custody interrogatory and deposition of the mother that have been denied via a protective order of the court." Id. at 7. He says he remains in contempt of court even though he has "substantially complied" with financial discovery. Id.

The plaintiff alleges that on July 1, 2022, Judge Cafferty "via a proposed order by Jessica Grundberg fined the father to pay for the mother's attorney fees." Id. He reiterates that this was a violation of his Eighth Amendment right "to not have excessive fines imposed." Id.

Finally, the plaintiff alleges that from May to July 2022, Judge Cafferty "has substituted her judgment to Jessica Grundberg who proposes orders to the court that violate the plaintiff's rights to 4th amendment privacy also creating unduly burdensome tasks upon the father with instances of duplicate work in financial discovery." Id. at 7.

The plaintiff cites to and quotes several Supreme Court cases that discuss parental rights. Id. at 7–10. For relief, he asks the court to "grant an injunction on Wisconsin Family Law Case 2021FA000592 because of the violation of [his] United States Constitutional Rights under the Color of Law." Id. at 10. He also seeks monetary damages. Id.

## III. The State Court Case

A review of the publicly available docket shows that on July 15, 2021, a summons and petition were issued in In re the Marriage of Nicole Huiras and Nathan Huiras, Case No. 2021FA000592 (Racine County Circuit Court) (available at https://wcca.wicourts.gov). The presiding judge is Kristin M. Cafferty. The petitioner is Nicole Huiras and the respondent is the plaintiff. Megan McGee Norris is the appointed guardian *ad litem* and Andrew Patch is listed as the "FCW"—presumably family court worker. It appears that the plaintiff is represented by Attorney Felicia Owen and Nicole Huiras is represented by Jessica Anne Grundberg. Id. The case remains pending; there are several hearings scheduled, including a December 20, 2022 status conference and a trial scheduled for March 20–24, 2023. Id.

## IV. Motions to Dismiss

### A. Interference with an Ongoing Family Law Case

There is an overarching problem with all the plaintiff's claims against all the defendants. As the Seventh Circuit has explained, there are a number of "abstention" doctrines that allow, and sometimes require, a federal court to "decline to exercise its jurisdiction where doing so would intrude upon the

13

independence of the state courts and their ability to resolve the cases before them." J.B. v. Woodard, 997 F.3d 714, 721–22 (7th Cir. 2021) (quoting SKS & Assocs., Inc. v. Dart, 619 F.3d 674, 677 (7th Cir. 2010)). Each of these abstention cases—Colo. River Water Conservation District v. U.S., 424 U.S. 800 (1976); Younger v. Harris, 401 U.S. 37 (1971); Burford v. Sun Oil Co., 319 U.S. 315 (1943); R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)/District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)—implicates "(in one way or another and to different degree) underlying principles of equity, comity, and federalism foundational to our constitutional structure." Id.

Pullman abstention requires a federal court to abstain from exercising its jurisdiction "where 'the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law.'" Int'l Coll. of Surgeons v. City of Chi., 153 F.3d 356, 365 (7th Cir. 1998) (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-17 (1996)). Pullman abstention is not a perfect fit; it is not clear that the fifth amended complaint raises any federal constitutional questions, or that the Racine County family court case involves any ambiguous state law. A federal court should exercise Burford abstention when it is asked to decide "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," Quackenbush, 517 U.S. at 726-27 (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989)) or when it is asked to

14

conduct a review that "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," id. The fifth amended complaint does not ask this federal court to decide difficult questions of state law that affect broad-reaching public policy problems or to disrupt state efforts to establish coherent public policy.

Younger abstention, however, "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." FreeEats.com, Inc. v. Indiana, 502 F.3d 590, 595 (7th Cir. 2007).

> . . . Younger and its progeny 'require federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances—like bias or harassment—exist which auger against abstention."

Id. at 596 (quoting Majors v. Engelbrecht, 149 F.3d 709, 711 (7th Cir. 1998)). The relief the plaintiff requests—that the court enjoin the ongoing family court proceedings in Racine County—satisfies the Younger abstention factors. The Racine County case is judicial in nature. It implicates important state interests—the state's compelling need to protect children. See Doe v. Heck, 327 F.3d 492, 520 (7th Cir. 2003) (quoting Brokaw v. Mercer Cty., 235 F.3d 1000, 1019 (7th Cir. 2000)). It offers an adequate opportunity for review of constitutional claims—the plaintiff will have the opportunity to challenge the state court's rulings both during the pending case and by appeal once it is concluded. While the plaintiff does not agree with the state court's rulings, Gunderson's or McGee Norris's advocacy or Patch and Leggett's performance of

15

their duties, there is no evidence that the state proceedings were brought for the purpose of bias or harassment.

The Seventh Circuit considered similar facts in J.B. v. Woodard; the plaintiff in that case filed a federal lawsuit while his child custody dispute was ongoing, challenging actions of the department of children and family services employees in that case. Woodard, 997 F.3d at 718-19. Observing this timing, the Seventh Circuit was left "with the clear and unmistakable impression that [the plaintiff] seeks a favorable federal court judgment so that he can use that judgment to influence ongoing state court decision making." Id. at 721. The court found that the judgment the plaintiff sought from the federal court "runs contrary to the equity, comity, and federalism principles underlying our abstention doctrines," and concluded that the district court correctly abstained. Id.

> It is not enough for [the plaintiff] to invoke § 1983 and point to his constitutional right to familial association. He cannot compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute. Yet that is precisely what is going on. [The plaintiff] came to federal court to go on the offensive—to use a favorable federal court judgment in state court to influence the state judge's parenting time decisions. Allowing that federal disruption and interference would offend the principles on which the abstention doctrines rest. [The plaintiff] seeks a level of intrusion by the federal courts that is 'simply too high.' [*Courthouse News Serv. v. Brown*, 908 F.3d 1063] at 1074 [(7th Cir. 2018)]. Exercising federal jurisdiction over his claims would "reflect a lack of respect for the state's ability to resolve [these issues] properly before its courts." *SKS & Assocs.* [*Inc. v. Dart*], 619 F.3d [674] at 679 [(7th Cir. 2010)].

Id. at 722.

That conclusion is even more warranted here. The plaintiff has asked this court to *enjoin* the Racine County proceedings altogether—that appears to require abstention under <u>Younger</u>. He also appears to have come to federal court to obtain a judgment that will influence the defendants in performing their duties in the state case, which appears to require the kind of abstention described in <u>Woodard</u>. Because the state-court family law case is ongoing, "[t]he adjudication of [the plaintiff's] due process claims threaten interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down." <u>Woodard</u>, 997 F.3d at 723 (citing <u>DuBroff v. DuBroff</u>, 833 F.2d 557, 561 (5th Cir. 1987)). "Put most simply, 'federal courts may decline to exercise jurisdiction where denying a federal forum would "clearly serve an important countervailing interest," including "regard for federal-state relations."'" <u>Id.</u> (quoting <u>Courthouse News Serv.</u>, 908 F.3d at 1071).

The court must decline to exercise its jurisdiction over the plaintiff's case for these reasons. In an abundance of caution, however, the court will explain how it would have addressed the defendants' other arguments, if it had been able to exercise its jurisdiction.

B.    <u>Rooker-Feldman</u>

Defendants McGee Norris, Cafferty, Patch and Leggett assert that the plaintiff's claims are barred by the <u>Rooker-Feldman</u> doctrine. <u>See</u> Dkt. No. 38 at 15–17; Dkt. No. 44 at 8–9; Dkt. No. 49 at 1; Dkt. No. 58 at 9–12.

17

"The *Rooker-Feldman* doctrine precludes federal courts from deciding cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Andrade v. City of Hammond, 9 F.4th 947, 949 (7th Cir. 2021) (internal citations omitted) (quoting Hemmer v. Ind. State Bd. of Animal Health, 532 F.3d 610, 613 (7th Cir. 2008)). "The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it." Sykes v. Cook Cty. Circuit Court Probate Div., 837 F.3d 736, 742 (7th Cir. 2016) (citing Brown v. Bowman, 668 F.3d 437, 442 (7th Cir. 2012)).

"To determine whether the *Rooker-Feldman* doctrine bars jurisdiction, [courts] apply a two-step analysis." Andrade, 9 F.4th at 950. First, the court must "consider whether a plaintiff's federal claims are 'independent' or, instead, whether they 'either "directly" challenge a state court judgment or are inextricably intertwined with one.'" Id. (quoting Swartz v. Heartland Equine Rescue, 940 F.3d 387, 391 (7th Cir. 2019)). "If they are 'independent' claims, the *Rooker-Feldman* doctrine does not preclude federal courts from exercising jurisdiction over them." Id. If the claim directly challenges or is "inextricably intertwined" with the state court judgment, then the court moves on to step two and must "determine 'whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings.'" Id. (quoting Jakupovic v. Curran,

18

850 F.3d 898, 902 (7th Cir. 2017)). "Only if the plaintiff did have such an opportunity does Rooker-Feldman strip federal courts of jurisdiction." Id.

"The doctrine only applies . . . where 'the losing party in state court filed suit in federal court *after the state proceedings ended . . . .*'" TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 591 (7th Cir. 2005) (emphasis in original) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005)). See Kowalski v. Boliker, 893 F.3d 987, 995 (7th Cir. 2018) (finding Rooker-Feldman did not bar the case because "the state court had not rendered a judgment before the district court proceedings began"); Jones v. Brennan, 465 F.3d 304, 305 (7th Cir. 2006) (concluding the doctrine was inapplicable because "[t]he plaintiff filed her suit before the litigation in state court . . . was completed"). "[P]roceedings end for *Rooker-Feldman* purposes when the state courts *finally* resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum." Parker v. Lyons, 757 F.3d 701, 706 (7th Cir. 2014) (emphasis in original) (citation omitted).

Although the plaintiff's claims directly relate to Racine County Circuit Court Case No. 2021FA000592, the case was ongoing at the time he filed his complaints and still is ongoing. Because Rooker-Feldman does not apply to state court cases that have not yet resulted in a final judgment, if the court had been able to exercise jurisdiction it would not have granted the defendants' motions to the extent they are based on the Rooker-Feldman doctrine.

19

C.    Judge Cafferty (Dkt. No. 43)

Judge Cafferty argues that the plaintiff's claims against her are barred by judicial immunity and qualified immunity, and that the fifth amended complaint fails to state a claim upon which relief can be granted. Dkt. No. 44 at 4–8.

"Judges are generally entitled to absolute immunity from suit for their judicial conduct." Schneider v. Cty. of Will, 366 F. App'x 683, 684 (7th Cir. 2010) (citations omitted). "Judges have immunity for judicial acts even if they act erroneously, maliciously, or in excess of their authority . . . ." Bertha v. Hain, 787 F. App'x 334, 338 (7th Cir. 2019). "The doctrine protects judges from the fear of future litigation brought by disgruntled litigants unhappy with judicial decision-making." Agrawal v. Pallmeyer, 313 F. App'x 866, 867 (7th Cir. 2009). Judicial immunity also extends to claims for injunctive relief. File v. Martin, 33 F.4th 385, 391 (7th Cir. 2022). The legislature amended 42 U.S.C. §1983 to expressly bar claims for prospective relief against a judicial officer acting in his or her judicial capacity. Id. Section 1983 states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. §1983.

There are two situations in which the doctrine does not apply: "Judicial immunity insulates judges from being sued except when a plaintiff sues a judge for (1) 'nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity,' or (2) 'actions, though judicial in nature, taken in the complete

absence of all jurisdiction.'" Cossio v. Tourtelot, 725 F. App'x 406, 410 (7th Cir. 2018) (quoting Mireles v. Waco, 502 U.S. 9, 11–12 (1991)). See also Polzin v. Gage, 636 F.3d 834, 838 (7th Cir. 2011) ("A judge has absolute immunity for any judicial actions unless the judge acted in the absence of all jurisdiction.").

All the plaintiff's claims against Cafferty arise from her judicial conduct. Judge Cafferty is a circuit court judge in Racine County. https://www. racinecounty.com/departments/clerk-of-circuit-court/court-information/ court-officials. She has jurisdiction to preside over the family court case in which the plaintiff is a party. The allegations in the fifth amended complaint assert that the judge abused her discretion or otherwise violated the plaintiff's rights when making various decisions during the plaintiff's divorce and custody proceedings. See Dkt. No. 33 at 4–7. The plaintiff has not alleged that Judge Cafferty violated a declaratory decree or that declaratory relief was unavailable. If the court had been able to exercise its jurisdiction, it would have granted Judge Cafferty's motion and dismissed her as a defendant.

D.    McGee Norris (Dkt. No. 37) and Grundberg (Dkt. No. 34)

Defendants McGee Norris and Grundberg argue that they cannot be sued under 42 U.S.C. §1983 because they are not state actors and were not jointly engaged with state officials in the alleged misconduct. Dkt. No. 35; Dkt. No. 38 at 8–11.

"Section 1983 creates a federal remedy against anyone who, under color of state law, deprives any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws." St. Anthony

Case 2:22-cv-00575-PP   Filed 11/09/22   Page 21 of 34   Document 84

Hosp. v. Eagleson, 40 F.4th 492, 502 (7th Cir. 2022) (internal quotations omitted) (quoting Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health, 699 F.3d 962, 972 (7th Cir. 2012)). Guardians *ad litem*, such as defendant Norris, are not state actors. See Bach v. Milwaukee Cty. Circuit Court, 565 F. App'x 531, 532 (7th Cir. 2014) ("[T]he guardian *ad litem*, is not a state actor subject to § 1983."); Nelson v. Kujawa, No. 07-C-741, 2008 WL 2401260, at *2 (E.D. Wis. June 11, 2008) ("state-appointed guardians ad litem are *not* state actors subject to liability under 42 U.S.C. § 1983"). Guardians *ad litem* also are "absolutely immune from liability for damages when they act at the court's discretion." Cooney v. Rossiter, 583 F.3d 967, 970 (7th Cir. 2009). If the court had been able to exercise its jurisdiction, it would have granted McGee Norris's motion and dismissed her as a defendant.

Defendant Grundberg is not employed by the state; she is a private lawyer employed by Nicole Huiras. "Private persons are considered state actors—that is, they are deemed to have acted under color of state law and thus face § 1983 liability—in certain limited circumstances." Camm v. Faith, 937 F.3d 1096, 1105 (7th Cir. 2019). "The first is where the [S]tate effectively directs or controls the actions of the private party such that the [S]tate can be held responsible for the private party's decision. . . . The second situation is when the [S]tate delegates a public function to a private entity." Id. (alterations in original) (quoting Payton v. Rush–Presbyterian–St. Luke's Med. Ctr., 184 F.3d 623, 628 (7th Cir. 1999)). The plaintiff has not demonstrated, nor does the

22

record indicate, that the state of Wisconsin either directed or controlled Grundberg's actions or that it delegated its functions to her.

Additionally, "[a] private person acts under color of state law when she is a 'willful participant in joint action with the State or its agents.'" L.P. v. Marian Catholic High Sch., 852 F.3d 690, 696 (7th Cir. 2017) (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)). Put another way, a private person may be liable under §1983 "for conspiring with a state actor to violate the constitutional rights of another." Maniscalco v. Simon, 712 F.3d 1139, 1145 (7th Cir. 2013). "The plaintiff must identify a sufficient nexus between the state and the private actor to support a finding that the deprivation committed by the private actor is 'fairly attributable to the state.'" Marian Catholic High Sch., 852 F.3d at 696 (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).

The plaintiff first alleges that Grundberg conspired with someone's family members "to file misrepresenting affidavits without any factual basis." Id. at 3. This does not state a claim for liability under §1983, because the plaintiff has not alleged that Grundberg conspired with *state actors*, but rather with private citizens. The plaintiff also alleges that Grundberg committed libel when she acted as a witness and claimed the plaintiff had put a nail in her tire. Id. at 3–5. Libel is a cause of action under Wisconsin state law. Green v. Noble, No. 21-cv-615, 2022 WL 656877, *8 (E.D. Wis. Mar. 4, 2022). It is not a violation of a federal law or a provision of the United States Constitution.

23

The plaintiff claims that Grundberg conspired with the other defendants to deprive him of his Fourteenth Amendment due process and equal protection rights. Dkt. No. 33 at 1. Specifically, the plaintiff says that he has a "fundamental liberty interest of care and custody to his biological offspring." Id. The plaintiff is correct that "the interest of parents in the care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests" recognized by the Supreme Court and guaranteed by the Fourteenth Amendment. Troxel v. Granville, 530 U.S. 57, 65 (2000). But this right is not absolute; it is limited by the government's compelling interest in the protection of children "particularly where the children need to be protected from their own parents." Doe v. Heck, 327 F.3d at 520 (quoting Brokaw v. Mercer Cty., 235 F.3d 1000, 1019 (7th Cir. 2000)).

More relevant, however, is the fact that the plaintiff has not described how Grundberg "conspired" with anyone. The plaintiff alleges that Judge Cafferty prohibited him from cross-examining Grundberg and claims this was a violation of his Fourteenth Amendment rights. Id. at 3. But he has not alleged that Grundberg had anything to do with that decision. He claims that the "Racine County Child Support Corporate Counsel" violated his rights, id. at 6, but Grundberg was not an employee of that organization. He points to Judge Cafferty's decision to grant Grundberg's request for attorneys' fees and claims that this was a violation of his Eighth Amendment rights, id., but it was the judge's decision to grant the fee request; Grundberg did not have the authority to do so. He alleges that Judge Cafferty "substituted her judgment to Jessica

24

Grundberg who proposes orders to the court that violate the plaintiff's rights to 4th amendment privacy . . . ." Id. at 7. The plaintiff has not alleged that Grundberg made an agreement with Judge Cafferty, only that Judge Cafferty agreed with Grundberg.

An attorney has an ethical obligation to abide by her client's decisions concerning the objectives of representation and take whatever action is impliedly authorized to pursue those objectives. SCR 20:1.2(a). The plaintiff's claims amount to an argument that Grundberg zealously represented her client and convinced the judge to grant the motions Grundberg filed on her client's behalf. That is not a conspiracy. That is what lawyers are supposed to do. General, conclusory allegations that someone "conspired" with someone else are not sufficient to state a claim. See Cooney v. Cassady, 735 F.3d 514, 519 (7th Cir. 2013) ("'[V]ague and conclusory allegations of the existence of a conspiracy are not enough' . . . to survive a motion to dismiss.") (quoting Lewis v. Mills, 677 F.3d 324, 333 (7th Cir. 2012)). If the court had been able to exercise its jurisdiction, it would have granted Grundberg's motion and dismissed her as a defendant.

E.    Patch (Dkt. No. 49) and Leggett (Dkt. No. 57)

Patch (who is representing himself) argues that the plaintiff has failed to state a claim over which the court has subject matter jurisdiction, that he has failed to state a claim for which relief maybe granted and that he should "be afforded similar immunity" to that of a guardian *ad litem*. Dkt. No. 49. Leggett asserts that the fifth amended complaint fails to state a claim against him for

25

which relief may be granted, that he is entitled to immunity under state law, that he is entitled to quasi-judicial immunity under state law and that he is entitled to qualified immunity. Dkt. No. 58. Although Patch repeated several of McGee Norris's and Grundberg's arguments, Leggett's arguments that he is entitled to discretionary immunity under state law, quasi-judicial absolute immunity and qualified immunity, dkt. no. 58 at 3–8, are equally applicable to Patch.

Leggett first argues that he is immune from suit under Wis. Stat. §893.80(4), which provides that a plaintiff may not sue a governmental subdivision or agency's "officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." Dkt. No. 58 at 3 (quoting Wis. Stat. §893.80(4)). "Wisconsin courts have recognized these quoted terms as being synonymous with 'discretionary functions,' . . . and have held that a public officer is immune from suit where the act or acts complained of fall within the scope of the individual's public office." Sullivan v. Bornemann, 384 F.3d 372, 378 (7th Cir. 2004) (citations omitted). See also Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597–98 (7th Cir. 1997) ("The general rule acknowledged in Wisconsin is that a public officer or employee is immune from personal liability for injuries resulting from acts performed within the scope of the individual's public office."). "This statutory privilege . . . is not defeated by the possibility that the acts were malicious." Farr v. Gruber, 950 F.2d 399, 403 (7th Cir. 1991). The statute applies only to state law claims and the "statute can't immunize the [actor]

26

from liability for violating federal law." Petkus v. Richland Cty., 767 F.3d 647, 653 (7th Cir. 2014) (citing Felder v. Casey, 487 U.S. 131, 138 (1988)). Under this statute, Leggett and Patch are immune from liability for any state law claims the plaintiff has asserted against them.

Leggett also argues that he is entitled to qualified immunity as a government employee. Dkt. No. 58 at 6–8. "The district court may entertain a qualified-immunity defense on a defendant's motion to dismiss." Fosnight v. Jones, 41 F.4th 916, 924 (7th Cir. 2022). "Qualified immunity protects government officials from damages liability unless they 'violate clearly established statutory or constitutional rights.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Leggett works at the Racine County Child Support Agency; Patch is a family court worker in Racine County. Both are government officials who may raise the defense of qualified immunity. "Once the defense is raised, the plaintiff bears the burden of defeating it by showing (1) 'that the defendant violated a constitutional right" and (2) that the constitutional right at issue "was clearly established at the time of the alleged violation.'" Fosnight, 41 F.4th at 924 (quoting Archer v. Chisholm, 870 F.3d 603, 613 (7th Cir. 2017)). "A failure to show either is fatal for the plaintiff's case . . . ." Archer, 870 F.3d at 613.

Leggett and Patch are entitled to qualified immunity because the plaintiff has not alleged sufficient facts to state a claim that either of them violated his constitutional rights. The fifth amended complaint describes Leggett as "representing the Racine County Child Support Agency" and specifically alleges

27

that Leggett "issued an order" to the plaintiff's employer to garnish $1,640 per month from the plaintiff's wages. Dkt. No. 33 at ¶6. The plaintiff asserts that he does "not consent or agree to this statutory child support enforcement scheme." Id. But Leggett was enforcing an order issued by Commissioner Georgia Herrera; she was the one who ordered collection of the monthly child support payments. Id. at ¶3. The fifth amended complaint states that Commissioner Herrera violated the plaintiff's "14th amendment right to due process and equal protections to the fundamental liberty interest of care and custody to his biological offspring." Id. But the fifth amended complaint does not assert this same claim, or any other constitutional claim, against Leggett. The plaintiff has not stated a claim that Leggett violated a constitutional right.

As to Patch, the fifth amended complaint refers only to his involvement in providing recommendations regarding placement of the plaintiff's children. For example, the complaint states that Patch indicated in writing and orally in court that "a father asking for fundamental liberty interest rights is 'Aggressive' behavior that has been used against the father to take away child placement." Dkt. No. 33 at ¶7. The complaint also states that Patch was called as a witness during a hearing and "referred to a zoom video where he did not like the father's behavior as the reason to remove all child contact." Id. at 14. The plaintiff characterized this hearing as an "unfair court hearing" during which he "asked for due process." Id. But it was Judge Cafferty who was presiding over the hearing, not Patch—if there were any due process violations (and the court has not found that there were), those would be attributable to Judge

28

Cafferty, who is immune from suit. The fifth amended complaint mentions a small claims lawsuit the plaintiff filed against Patch for giving what the plaintiff characterized as "malicious testimony," as well as state criminal charges the plaintiff claims Patch filed against him.[3] Id. at ¶¶18, 21. Patch describes the role of family court workers as investigating family court cases involving disputes over child placement and custody, and offering the court recommendations based upon their findings. Dkt. No. 49 at 1. The fact that Patch made recommendations with which the plaintiff disagreed does not state a constitutional violation. Nor does the fact that Patch may have reported conduct to law enforcement which caused criminal charges to be issued against the plaintiff.

In his response to defendant Patch's motion to dismiss, the plaintiff raises claims of misrepresentation and fraud against Patch, as well as reasserting his claim of "malicious testimony." Dkt. No. 61 at 2. The plaintiff's response also asserts that Patch violated the plaintiff's First Amendment "right to file a lawsuit and petition [his] grievances" and that the criminal charges "should be dismissed if the State of Wisconsin chooses to respect [the plaintiff's] constitutional right to freedom of speech and access to the courts via a petition." Id. at 2–3. These arguments have no merit. Misrepresentation and fraud are state law causes of action, not federal constitutional violations. Patch

_____

[3] Perhaps the plaintiff means that Patch reported him to law enforcement. Patch could not have "filed" criminal charges against the plaintiff, because "private persons have no right (in our legal system, unlike for example the British) to enforce criminal or other regulatory statutes . . . ." Ragsdale v. Turnock, 941 F.2d 501, 509 (7th Cir. 1991) (Posner, J., concurring in part).

29

has no power to dismiss criminal charges brought by the state of Wisconsin (or to force the state to bring such criminal charges). And it is not clear how Patch prevented the plaintiff from filing a lawsuit—he *did* file a lawsuit against Patch in small claims court. If the court were to exercise its jurisdiction, it would dismiss Leggett and Patch because they have statutory immunity from the plaintiff's state-law claims and qualified immunity because the plaintiff has not stated sufficient facts to support his claims that they violated his constitutional rights.

## V. Other Motions

As the court has indicated, it cannot exercise its jurisdiction over this case. If it could, however, it would deny as moot Grundberg's motion to strike the plaintiff's second response brief. Dkt. No. 63. It also would deny the plaintiff's motion for a preliminary injunction, dkt. no. 72, and the plaintiff's motion for a temporary restraining order, dkt. no. 76. For the very reason that the court declines to exercise jurisdiction, it cannot issue an order enjoining a state court's orders regarding child support payments and garnishment. "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction or to protect or effectuate its judgments." 28 U.S.C. §2283. There is no act of Congress authorizing this court to do what the plaintiff asks. It is not necessary for this court to stay the state court's orders to aid its jurisdiction or to effectuate or protect its judgments. As for the plaintiff's request that this court issue a temporary restraining order

30

preventing Judge Cafferty from sending him to jail, the court has addressed that in its discussion of Younger abstention. The plaintiff has a remedy if he disagrees with Judge Cafferty's rulings. "If a state court errs in its rulings, . . . the traditional remedy has been some form of appeal, . . . not the entry of an *ex ante* injunction preventing the state court from hearing cases." Whole Woman's Health v. Jackson, ___ U.S. ___, 142 S. Ct. 522, 532 (2021). Even if the court were to exercise its jurisdiction, it would have denied the plaintiff's motions for a preliminary injunction and a temporary restraining order.

## VI. Sanctions

Finally, defendant McGee Norris asks the court to sanction the plaintiff by prohibiting him from filing any other claims against her relating to the underlying family court case and by ordering him to pay attorneys' fees and costs for her efforts to dismiss the claims against her. Dkt. No. 38 at 17. McGee Norris asserts that the fifth amended complaint contains "frivolous, unsubstantiated, and unsupported" claims and that even though the plaintiff's challenges to her role as guardian *ad litem* were rejected and the court in the underlying state action found the plaintiff's conduct to be harassing, this federal case is the plaintiff's continuation of those efforts. Id. McGee Norris cites the court's inherent power to sanction "inappropriate and improper litigation conduct," asserting that the "plaintiff shows no signs of letting up on his" "harassing and frivolous litigation crusade against Norris . . . ." Id. at 17–18.

31

Again, the court has declined to exercise its jurisdiction because the plaintiff asks this federal court to step into and interfere with ongoing state court proceedings. It notes, however, that federal district courts have an inherent "authority 'to fashion an appropriate sanction for conduct which abuses the judicial process . . . .'" Abner v. Scott Mem'l Hosp., 634 F.3d 962, 964 (7th Cir. 2011) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991)). "A court may use its inherent authority to sanction those who show 'willful disobedience of a court order,' act in 'bad faith, vexatiously, wantonly, or for oppressive reasons,' for fraud on the court, delay, disruption, or 'hampering enforcement of a court's order.'" Fuery v. City of Chi., 900 F.3d 450, 463 (7th Cir. 2018) (quoting Chambers, 501 U.S. at 45–46). "Before imposing sanctions for litigation misconduct, the district court must make a finding of 'bad faith, designed to obstruct the judicial process, or a violation of a court order.'" REXA, Inc. v. Chester, 42 F.4th 652, 671 (7th Cir. 2022) (quoting Fuery, 900 F.3d at 463–64). See also Ramirez v. T&H Lemont, Inc., 845 F.3d 772, 776 (7th Cir. 2016) ("Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith."). "When findings of bad faith are properly made, district courts have inherent authority to award attorneys' fees as a sanction." Id. (citing Chambers, 501 U.S. at 45–47). A party's "pro se status [does] not insulate him from sanctions." Mohammed v. Anderson, 833 F. App'x 651, 655 (7th Cir. 2020) (citing Collins v. Illinois, 554 F.3d 693, 697 (7th Cir. 2009)).

In support of her request for sanctions, McGee Norris lists examples of the plaintiff's alleged misconduct in the underlying state court proceeding. See Dkt. No. 38 at 5. She states that the plaintiff twice frivolously sought to remove her as guardian *ad litem*. Id. (citing Dkt. Nos. 39-2, 39-4). She points to orders of the state court judge demonstrating that the judge found it necessary to prohibit the plaintiff from going to McGee Norris's residence or contacting her on her cell phone. Id. (citing Dkt. No. 39-3 at ¶2; Dkt. No. 39-5 at ¶1). The second order of the state court judge noted that the court was "very disturbed" by certain testimony and reminded the plaintiff that he was not to go to McGee Norris's residence. Dkt. No. 39-5 at ¶1. The order also put the plaintiff "on notice that the Court will not tolerate the abuse of the professionals in this case." Id. McGee Norris asserts that there are multiple other instances of the plaintiff's "harassing and abusive behavior to all professionals involved in the underlying matter, including Norris." Dkt. No. 38 at 5.

These documents do not provide enough detail for the court to conclude that the plaintiff acted in bad faith in filing this lawsuit. The court has declined to interfere with the state court case on the plaintiff's behalf. It also declines to interfere on McGee Norris's behalf. But the court has stated multiple times in this order that federal courts may not interfere with or intervene in ongoing state court proceedings. If the plaintiff files further federal lawsuits while the state court family case is still pending, sanctions for abuse of the judicial process may be warranted.

## VII.   Conclusion

The court **DENIES AS MOOT** defendant Grundberg's motions to dismiss. Dkt. Nos. 5, 34.

The court **DENIES AS MOOT** defendant McGee Norris's motions to dismiss. Dkt. Nos. 29, 37. The court **DENIES AS MOOT** McGee Norris's request for sanctions. Dkt. No. 38 at 17–18.

The court **DENIES AS MOOT** defendant Cafferty's motion to dismiss. Dkt. No. 43.

The court **DENIES AS MOOT** defendant Patch's motion to dismiss. Dkt. No. 49.

The court **DENIES AS MOOT** defendant Leggett's motion to dismiss. Dkt. No. 57.

The court **DENIES AS MOOT** defendant Grundberg's motion to strike. Dkt. No. 63.

The court **DENIES AS MOOT** the plaintiff's motions for preliminary injunction and temporary restraining order. Dkt. Nos. 72, 76.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE** because the court lacks subject matter jurisdiction. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 9th day of November, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

34